UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PATRICIA SKARTADOS,

                                    Plaintiff,

                                                              **MEMORANDUM & ORDER**
                    - against -                                20-CV-3909 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

        Plaintiff Patricia Skartados brings this action under 42 U.S.C. § 405(g) and 42 U.S.C.

§ 1383(c), seeking judicial review of the Social Security Administration's ("SSA") denial of her

claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  The

parties have cross-moved for judgment on the pleadings.  (Dkts. 12, 15.)  For the reasons set forth

below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the

Commissioner's cross-motion.

                                    **BACKGROUND**

I.      **Factual and Procedural Background**

        Prior to September 2016, Plaintiff worked as a full-time home attendant.  (Tr. 39.[1])

Plaintiff was responsible for taking care of elderly clients, which included shopping, cleaning,

administering medications, and assisting them in travel to the doctors.  (Tr. 39–40.)  On September

22, 2016, Plaintiff was admitted to Mount Sinai Hospital for a 27-week pre-term delivery due to

an infection with neonatal demise.  (Tr. 240.)  The child passed away three days after delivery.

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript.

(*Id.*)  Plaintiff was evaluated for post-partum bereavement wherein she was noted to have an "undocumented cognitive delay" and flat affect.  (*Id.*)

On November 23, 2016, Plaintiff began treatment at Aristotle's Psychological with psychologist Dr. Vaia Delidimitropulu and licensed mental health counselor ("LMHC") Christin Gianola, seeking treatment for her persistent depression, anxiety, and unresolved grief.[2]  (Tr. 272, 282–84.)  Plaintiff had sessions approximately every two weeks from November 2016 to her May 2019 administrative hearing in this case, with several breaks lasting a few months.  (Tr. 281–91.)  Dr. Delidimitropulu and LMHC Gianola diagnosed Plaintiff with major depressive disorder.  (Tr. 282.)  During the sessions, Plaintiff discussed issues she had with her family and noted difficulties with sleeping and managing anxiety, stress, and sadness over the loss of her child.  (Tr. 282–91.)

On December 2, 2017, Plaintiff applied for DIB, claiming that she had been disabled since September 22, 2016, due to adjustment disorder with depression and anxiety, as well as obesity.  (Tr. 11, 14.)  Plaintiff also filed a Title XVI application for SSI on April 1, 2019.  (Tr. 11.)

In March 2018, consultative examiner Dr. Toula Georgiou conducted a psychiatric examination of Plaintiff, during which Plaintiff reported difficulty falling asleep, increased appetite, depressive and dysphoric moods, crying spells, fatigue, loss of interests and pleasure, diminished self-esteem, social withdrawal, and a history of special education.  (Tr. 262–65.)  Dr. Georgiou concluded that Plaintiff "may have difficulties regulating her emotions, concentrating,

---

[2] LMHC Gianola provides a permit number, indicating that she is "licensed."  (Tr. 279.)  Prior to the March 27, 2017 amendments to the SSA's regulations, an LMHC was not an "acceptable medical source" whose opinion needed to be considered by an ALJ.  *Withus v. Saul*, No. 18-CV-10923 (VSB) (JLC), 2021 WL 2012270, at *7 & n.10 (S.D.N.Y. May 19, 2021) (collecting cases).  However, in cases with claims filed after March 27, 2017, such as this one, LMHCs are considered acceptable medical sources and thus ALJs must consider their opinions.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017) ("[T]he definition of medical source includes licensed mental health care providers working within the scope of practice permitted by law.").

working at a consistent pace, and having to maintain a regular work schedule," and found that Plaintiff's psychiatric difficulties may "significantly" interfere with her daily functioning. (Tr. 265.)

On April 2, 2018—before the SSA had obtained any treatment notes from Plaintiff's mental health providers and without personally examining Plaintiff—Disability Determination Services ("DDS") medical examiner Dr. Anderson[3] evaluated Plaintiff's impairment based on Dr. Georgiou's evaluation. (Tr. 267–69.) Dr. Anderson determined that Plaintiff's concentration and attention were "moderately" impaired and that her memory was "mildly" impaired. (*Id.*) On April 5, 2018, Plaintiff's claims for disability were denied. (Tr. 11.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*)

In May 2018, Plaintiff began treatment with Dr. Nabil Rezk, Plaintiff's treating psychiatrist. (Tr. 292.) Plaintiff met with Dr. Rezk approximately once a month from May 2018 until the hearing before the ALJ in May 2019. (Tr. 292–334.) Dr. Rezk diagnosed Plaintiff with major depressive disorder with acute exacerbation and prescribed Paxil and Trazadone. (Tr. 292.) Dr. Rezk continued to diagnose Plaintiff with major depressive disorder and increased Plaintiff's medication on four occasions, along with prescribing Wellbutrin, given Plaintiff's difficulties with mood, concentration, memory, and energy. (Tr. 295–34.)

In August 2018, Plaintiff's treating psychologists, Dr. Delidimitropulu and LMHC Gianola, completed a Psychiatric/Psychological Impairment Questionnaire, which assessed how Plaintiff's mental impairments affected her ability to work with respect to several categories of functioning, such as understanding, remembering, or applying information; interacting with

---

[3] No first name for Dr. Anderson is reflected in the record. The "Evidence of Record" shows that Dr. Anderson only had access to Plaintiff's September 2016 Mount Sinai treatment notes at the time of evaluation. (Tr. 55–56.)

others; and concentrating, persisting, or maintaining pace.  (Tr. 272–79.)  They found that, as a result of her depression and anxiety,[4] Plaintiff had "marked limitations" in several categories of functioning, and "moderate limitations" in others.[5]  (*Id.*)  The report also estimated that Plaintiff would be absent from work two to three times per month given her symptoms and treatment.  (*Id.*)

In May 2019, Plaintiff's treatment notes from Aristotle's Psychological and Dr. Rezk were submitted to the SSA.  (Tr. 280, 292.)  On May 22, 2019, Plaintiff appeared with her attorney Douglas Kugal for a hearing before ALJ Sandra M. McKenna.  (Tr. 32–53.)  During the hearing, the ALJ questioned vocational expert ("VE") Marian Marracco, but did not ask her about Plaintiff's reported need to miss work two to three times per month.  (Tr. 48–52.)  By decision dated July 25, 2019, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from September 22, 2016, her alleged onset date, through the date of the ALJ's decision.  (Tr. 11–26.)  Plaintiff requested a review of the ALJ's decision, which was denied by the Appeals Council on June 26, 2020.  (Tr. 1–3.)  Thereafter, Plaintiff timely commenced this action.[6]

---

[4] It was also noted that Plaintiff suffered from poor memory, sleep and mood disturbances, emotional lability, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, generalized persistent anxiety, and hostility and irritability.  (*Id.*)

[5] "Marked limitation" was defined as "effectively preclud[ing] the individual from performing the activity in a meaningful manner," and "moderate limitation" was defined as "significantly affect[ing] but . . . not totally preclud[ing] the individual's ability to perform the activity."  (Tr. 274.)

[6] According to Title 42, United States Code, Section 405(g),

[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to [her] of notice of such decision or within such further time as the Commissioner of Social Security may allow.

## II.     The ALJ's Decision

In evaluating disability claims, an ALJ must adhere to a five-step inquiry.  The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity."   20 C.F.R. § 416.920(a)(4)(i). If the answer is yes, the plaintiff is not disabled.  *Id.*  If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment.  *Id.* § 416.920(a)(4)(ii).  An impairment is severe when it "significantly limit[s] [the plaintiff's] physical or mental ability to do basic work activities."  *Id.* § 416.922(a).  If the impairment is not severe, then the plaintiff is not disabled.[7]  *Id.* § 416.920(a)(4)(ii).  But if the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  *Id.* § 404.1520(a)(4)(iii); *see also id.* pt. 404, subpt. P, app. 1.  If the ALJ determines at step three that

---

42 U.S.C. § 405(g).   "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  The final decision was issued June 26, 2020 (Tr. 1), and the Complaint was filed on August 24, 2020 (Complaint, Dkt. 1), 55 days after the presumed receipt date of the decision, rendering this appeal timely.

[7] In cases involving mental health, such as this one, a mental health impairment is severe when the Plaintiff has either one extreme or two marked limitations in a broad area of functioning, which include understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves.  20 C.F.R. Part 404, Subpart P, App'x 1, § 12.04(B).  An "extreme limitation" is defined as the inability to function independently, appropriately, or effectively, and on a sustained basis.  *Id.*  A "marked limitation" means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.  *Id.*

the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act. *Id.* § 404.1520(a)(4)(iii).  On the other hand, if the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing to steps four and five.  To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 404.1545(a)(1).  The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* § 404.1520(a)(4)(iv).  If the answer is yes, the plaintiff is not disabled. *Id.* Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 404.1520(a)(4)(v).  If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.*

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 22, 2016.  (Tr. 13.)  At step two, the ALJ determined that Plaintiff had the "following severe impairments: adjustment disorder with depression and anxiety."  (Tr. 14.) The ALJ found Plaintiff's obesity to be non-severe.  (*Id.*)  At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments in the Listings.  (Tr. 14–16.)  The ALJ then determined Plaintiff's RFC as follows: "the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to performing simple, routine tasks and making simple work-related decisions."  (Tr. 17–24.)  Then, at step four, the ALJ concluded that due to her severe impairments, Plaintiff could not perform her past work as a home health aide.  (Tr. 24.) Finally, at step five, the ALJ found that there were other jobs Plaintiff could perform, such as retail

stocker, linen room attendant, and tagger.  (Tr. 24–25.)  The ALJ thus concluded that the Plaintiff was not disabled.  (*Id.*)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits.  42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera*, 697 F.3d at 151 (citations omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (internal quotation marks and brackets omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Id.* However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record."  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.  42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (per curiam).

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and fails to apply the relevant legal standards.  (Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mot."), Dkt. 13, at 7.)  For the reasons set forth below, the Court grants Plaintiff's motion and remands to the SSA because the ALJ failed to adequately develop the record and provided an RFC

7

that was not supported by substantial evidence.  *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC),
2017 WL 4334127, at *13–27 (E.D.N.Y. Sept. 28, 2017) (remanding after court determined that
the record had not been fully developed and that the RFC was not supported by substantial
evidence).  Additionally, on remand, the ALJ should further explain her credibility determinations,
including her reliance on evidence of daily functioning and extent of hospitalization.  *Hodge v.
Comm'r of Soc. Sec.*, No. 20-CV-769 (AMD), 2020 WL 7262846, at *4 (E.D.N.Y. Dec. 10, 2020)
("On remand, the ALJ should also include a specific credibility determination, explain how she
balanced the various factors, and identify any inconsistencies between the plaintiff's testimony and
the rest of the record.").

## I.     The ALJ's Failure to Develop the Record on Plaintiff's Mental Impairments

"The ALJ's failure to develop the record is a threshold issue, because the Court cannot rule
on whether the ALJ's decision regarding [Plaintiff's] functional capacity was supported by
substantial evidence if the determination was based on an incomplete record."  *Craig v. Comm'r
of Soc. Sec.*, 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016) (internal quotation marks omitted); *accord
Alvarez v. Comm'r of Soc. Sec.*, No. 14-CV-3542 (MKB), 2015 WL 5657389, at *14 (E.D.N.Y.
Sept. 23, 2015).  It is well-established in the Second Circuit that an ALJ presiding over a social
security hearing must "affirmatively develop the record in light of the essentially non-adversarial
nature of a benefits proceeding."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting
*Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009)).  This obligation exists "even
where, as here, the claimant is represented by counsel."  *Merriman v. Comm'r of Soc. Sec.*, No.
14-CV-3510 (PGG) (HBP), 2015 WL 5472934, at *18 (S.D.N.Y. Sept. 17, 2015) (quoting *Pratts
v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).

Here, there are several portions of the ALJ's decision that suggest ambiguity and a further
need to develop the record.  First, the ALJ failed to obtain a medical opinion from Plaintiff's

treating psychiatrist, Dr. Rezk.   Second, the ALJ did not adequately develop a record about Plaintiff's cognitive impairment.   Third, the ALJ should further develop whether Plaintiff's predicted absences would prevent her from working.   And finally, the ALJ's determination that all of the experts' conclusions, aside from non-examining DDS medical consultant Dr. Anderson, had inconsistencies with the record or were not persuasive suggests a need to further develop the limited record.

### A.        Obtaining a Medical Opinion from Dr. Rezk

An ALJ has "regulatory obligations to develop a complete medical record before making a disability determination."  *Pratts*, 94 F.3d at 37; *see* 20 C.F.R. § 416.912(b)(1).   As part of that obligation, an ALJ must attempt to obtain medical opinions—not just medical records—from a claimant's treating physicians.  *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10–11 (S.D.N.Y. Aug. 6, 2021) (collecting cases).   To fulfill that obligation, an ALJ must make an initial request for medical opinions and, if no opinion is received, make a follow-up request between 10 and 20 days after the initial request.  *Id.* at *10; 20 C.F.R § 404.1512(b)(1)(i). That obligation continues to exist even in cases involving claims filed after March 27, 2017, to which the "treating physician rule" does not apply.  *See Prieto*, 2021 WL 3475625, at *8, 10–11; *see also* 20 C.F.R. §§ 404.1527, 404.1520c; *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844, *5867-68 (Jan. 18, 2017). Medical opinions from treating physicians are critical because, beyond simply diagnosing the patient's impairment, they relate the impairment to the patient's functional capacity.  *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) ("The medical records discuss her illnesses and suggest treatment for them, but offer no insight into how her impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life.").

Here, while Dr. Rezk's treatment notes touch on Plaintiff's functional capacity, providing opinions on Plaintiff's memory and concentration (Tr. 292–334), they are not a complete medical opinion.  The record does not reveal any attempt by the ALJ to obtain a medical opinion from Dr. Rezk, and this alone is a sufficient basis to remand.  *See Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999) (remanding due to ALJ's failure to obtain "adequate information from [claimant's] treating physician"); *Wilson v. Colvin*, 107 F.Supp.3d 387, 402 (2d Cir. 1982) (remanding where there was an obvious gap in the record); *Oliveras Ex Rel. Gonzalez v. Astrue*, No. 07-CV-2841, 2008 WL 2262618, at *6–7 (S.D.N.Y. May 30, 2008) (remanding so the ALJ could make all reasonable efforts to obtain treating physician's opinion).  Furthermore, the inconsistencies identified by the ALJ (discussed below) made the need to obtain this opinion all the more significant.  *Prieto*, 2021 WL 3475625, at *12.

## B.      Potential Cognitive Impairment

There is a further, independent need to develop the record in this case: the ALJ needs to develop whether Plaintiff suffers from a cognitive impairment.  The ALJ, considering the results of a concentration examination performed by Dr. Georgiou, concluded that Plaintiff's "cognitive functioning was noted to appear below average, so the deficiencies in testing appear to be *possibly* due to this, rather than to concentration or attentional difficulties."  (Tr. 15 (emphasis added).)  Rather than support the ALJ's determination that Dr. Georgiou's finding was inconsistent with the record, this ambiguity created a duty to further develop the record.

Furthermore, there are several other parts of the record that indicate that Plaintiff may suffer from a cognitive impairment.  First, following the loss of her child, Plaintiff suffered from an "undocumented cognitive delay."  (Tr. 240–41.)  Second, Plaintiff was in special education classes from kindergarten to the 7th grade due to learning difficulties and received extra help from 8th to 12th grade.  (Tr. 263.)  Third, treatment notes provided by Dr. Delidimitropulu and LMHC

Gianola noted that Plaintiff's speech was "underdeveloped" and that she did not recognize words such as "marital status" or "concentration difficulties." (Tr. 284.) Finally, during the oral hearing, when asked how obesity affected her physically, the Plaintiff said that she did not understand the term "obesity." (Tr. 41.)

The ALJ had a duty to further develop the record on this issue rather than point to it as a possible alternative explanation to the testing performance. The ALJ should have developed the record with respect to this additional impairment, examining how it may have independently affected Plaintiff's RFC and obtaining a medical opinion on the issue. *Moran*, 569 F.3d at 112–15; *see also Jackson v. Berryhill*, 694 Fed. App'x 39, 41 (2d Cir. 2017) ("Presented with historical evidence of Jackson's cognitive impairments during high school and indications that those impairments had persisted and might even have worsened, the ALJ should have further developed the record . . . ."). Indeed, such a cognitive impairment, in itself, could support a finding of disability.

## C.     Expanding Vocational Expert Inquiry

On remand, the ALJ should also clarify whether Plaintiff's likely absences from work and estimated "off-task" time are compatible with the RFC determined by the ALJ. Dr. Delidimitropulu estimated that Plaintiff was likely to be absent two to three times per month due to her impairments or treatments. (Tr. 278–79.) Additionally, while the vocational expert testified that the given jobs could have no more than 10% off-task time, it does not appear that any medical expert estimated Plaintiff's likely off-task time, nor is this mentioned in the ALJ's decision. This is particularly important given the findings of Drs. Delidimitropulu and Georgiou. (Tr. 275 (finding Plaintiff was "markedly limited" in her ability "maintain attention and concentration for extended periods of time"); 263–65 (finding Plaintiff "may have difficulties regulating her emotions, concentrating, working at a consistent pace, and having to maintain a regular work

11

schedule").)  During the oral hearing, the ALJ failed to ask VE Marracco whether the estimated absences would be compatible with the jobs provided.  (Tr. 48–52.)  This is an important aspect of the RFC and should be clarified on remand.  *Box v. Colvin*, 3 F. Supp. 3d 27, 46 (E.D.N.Y. 2014) ("The ALJ also never addressed Dr. Benatar's opinion that the Plaintiff would have to miss work about twice a month due to his impairment and need to take unscheduled breaks throughout the eight-hour workday.").

### D.    The ALJ Should Further Develop Potential Inconsistencies in the Medical Experts' Opinions[8]

The ALJ's repeated findings of "inconsistencies" between the medical experts and the medical evidence suggest a further need to develop the limited 334-page record.  While there were several treating physicians that provided analyses of Plaintiff's health, the ALJ found that none of them supported her RFC determination.  (Tr. 24.)  The Court finds there is a need to develop the record and account for these potential inconsistencies.

The ALJ determined that Dr. Georgiou's opinion was persuasive, but noted that some of his findings were inconsistent with the record.  (Tr. 20.)  Dr. Georgiou conducted a one-time, face-to-face psychiatric evaluation of Plaintiff on March 21, 2018, and offered the following assessment:

> The claimant may have difficulties regulating her emotions, concentrating, working at a consistent pace, and having to maintain a regular work schedule at this time due to psychiatric reasons.  The results of the present evaluation appear to be consistent with psychiatric difficulties, and this may significantly interfere with the claimant's ability to function on a daily basis.

---

[8] The Court does not discuss the opinions of Drs. Lyudmila Trimba or P. Fazzari since both discussed Plaintiff's physical rather than mental health impairments, which are less relevant to this the ALJ's findings and this decision.

(Tr. 263–65.)  It was that portion of the opinion that the ALJ found to be "not sufficiently consistent with the medical or function evidence as a whole," finding that it "appears to be based on the claimant's own reports rather than on any clinical findings or observations."  (Tr. 19–20.)  This Court faced a substantially similar explanation of Dr. Georgiou's work in *Madera v. Comm'r of Soc. Sec.*, No. 20-CV-1459 (PKC), 2021 WL 4480656 (E.D.N.Y. Sept. 30, 2021).  In *Madera*, the ALJ assigned Dr. Georgiou's opinion "partial weight" given his "opinion that Plaintiff 'may' have difficulties is vague and not a specific, functional limitation" and "such restrictions are not entirely consistent with medical records."  *Id.* at \*4 (brackets omitted).  After determining that the record was not so consistent as to Plaintiff's ability to function in the workplace, the Court remanded the case for the ALJ to comply with his obligation "to resolve any ambiguity in the record created by Dr. Georgiou's 'vague' opinion."  *Id.*  Similarly, in this case it is also unclear what inconsistencies the ALJ was referring to when she partially dismissed Dr. Georgiou's opinion.  The ALJ noted a potential alternative reason for Plaintiff's performance on the testing administered by Dr. Georgiou, *i.e.*, lower cognitive functioning, and highlighted Plaintiff's limited ability to perform daily functions.  (Tr. 15, 23.)  Dr. Georgiou, however, was aware of Plaintiff's history of special education and nonetheless concluded that her impairment may lead to issues with concentration.  (Tr. 263–65.)  An ALJ may not simply substitute their opinion for that of a medical expert.  *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").

Findings of other medical experts further highlight the need to develop the record.  For example, the ALJ determined that Dr. Delidimitropulu's and LMHC Gianola's findings were "not sufficiently consistent with the medical evidence of record, which consistently indicates largely normal mental status findings."  (Tr. 24.)  This conclusion, however, is not supported by the record.

13

Dr. Delidimitropulu and LMHC Gianola began working with Plaintiff on November 23, 2016. (Tr. 281–91.)  Dr. Delidimitropulu and LMHC Gianola submitted Plaintiff's session notes (Tr. 280–91) and an "Impairment Questionnaire," (Tr. 272–79).  The questionnaire noted that Plaintiff had "marked limitations" in several categories of functioning, including: the ability to understand and remember detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to set realistic goals or make plans independently.  (Tr. 275–77.)  The questionnaire also noted several "moderately limited" functions, including the ability to respond appropriately to changes in the work setting, the ability to understand and remember one or two step instructions, and the ability to remember locations and work-like procedures.  (Tr. 274–77.)  In addition to the marked and moderate limitations, the questionnaire noted excessive apprehension, crying spells, and poor short-term memory.  (*Id.*)  The treatment notes, dated from November 2016 to May 2019, similarly present a picture of someone who has reported intermittent feelings of anxiety and depression.  Plaintiff consistently had family difficulty, particularly with her mother and sister, following the loss of her child.  (Tr. 285–90.)  Plaintiff reported difficulty sleeping, which Dr. Delidimitropulu noted "created/exacerbated migraines."  (Tr. 278, 290–91.)  While Plaintiff sometimes noted improvements in her mood, the treatment notes also noted a consistent increase in Plaintiff's antidepressant medication (Tr. 288–90 (noting three separate instances on 6/25/2018, 11/15/2018, 4/4/2019)), which, as discussed

14

below, was also consistent with the treatment notes of Dr. Rezk, Plaintiff's treating psychiatrist. It is thus unclear how Dr. Delidimitropulu's and LMHC Gianola's findings that Plaintiff's mental health impairments caused several "marked impairments" in her functional capacity were "not sufficiently consistent with the medical evidence of record." (Tr. 24.)

Dr. Rezk, Plaintiff's treating psychiatrist, began working with Plaintiff in May 2018. Dr. Rezk provided treatment notes, which demonstrated the following. On May 14, 2018, Dr. Rezk diagnosed Plaintiff with major depressive disorder with acute exacerbation and prescribed 20mg of Paxil and 50mg of Trazodone. (Tr. 292–94.) On May 25, 2018, Plaintiff continued to express depressive thoughts, crying, and poor sleep, appetite, concentration, and energy. (Tr. 295–97.) Dr. Rezk increased Plaintiff's dosage of Paxil to 30mg and Trazodone to 100mg. (*Id.*) On June 11, 2018, similar complaints were noted with some areas of improvement, including sleeping and appetite, but Dr. Rezk increased Plaintiff's dosage of Paxil to 40mg and Trazodone to 100mg. (Tr. 298–300.) During September and October 2018, Plaintiff reported increased stress and sadness given the anniversary of her daughter's death and Dr. Rezk increased Plaintiff's Paxil dosage to 50mg. (Tr. 307–13.) On November 5, 2018, Plaintiff reported worsening sleep and that she missed her daughter, and Dr. Rezk increased Plaintiff's Trazodone dosage. (Tr. 314–16.) In February 2019, Plaintiff reported poor concentration, low energy, and increased feelings of depression and loneliness, and Dr. Rezk increased Plaintiff's dosage of Paxil to 50mg, Trazodone to 150mg, and also prescribed 150mg of Wellbutrin. (Tr. 323–35.) While Plaintiff noted improvements in her mood in March 2019, in April 2019, Plaintiff stated that she was "not good," and reported an increasingly anxious mood, poor appetite, and poor concentration. (Tr. 329–31.) Dr. Rezk continued to prescribe Wellbutrin, Paxil, and Trazodone. (*Id.*) Dr. Rezk also indicated that

Plaintiff had a Global Assessment Functioning ("GAF") score of 60, which is approximately equivalent to "moderate symptoms."  (Tr. 20.)

Upon examination of Dr. Rezk's materials, the ALJ determined that "although the GAF scores . . . are generally consistent with the established residual functional capacity reflecting moderate limitations, they are not persuasive as GAF scores only represent a snapshot in time and are not function by function analysis."  (Tr. 24.)  While the ALJ is correct that GAF scores can paint an incomplete picture in the context of mental health, it is unclear how these scores relate to Dr. Rezk's decision to increase Plaintiff's medication on multiple occasions.  Courts have consistently noted that ALJs should rely on the substance of a medical opinion rather than its form. *Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022) ("[W]e take this occasion to reassert and clarify that the nature of an ALJ's inquiry in disability factfinding turns on the substance of the medical opinion at issue—not its form.").  The apparent inconsistency between the GAF scores and Plaintiff's continued need for more aggressive treatment cannot be resolved solely from the treatment notes, which warrants further need to develop by the record.

The only medical opinion consistent with the ALJ's ultimate RFC determination was that of DDS medical consultant Dr. Anderson.  (Tr. 23–24.)  Dr. Anderson did not personally examine Plaintiff, did not review the treatment notes from Plaintiff's mental health providers before rendering an opinion, and significantly relied on the one-time consultative examination of Dr. Georgiou.  (Tr. 267.)  Although relying on Dr. Georgiou's examination, Dr. Anderson found that Plaintiff's impairment affected her ability to function less than Dr. Georgiou did, concluding that Plaintiff's attention and concentration were moderately impaired and her recent and remote memory skills were mildly impaired.  (Tr. 23–24, 267.)

In sum, it is unclear what in the record was inconsistent with Dr. Georgiou's opinion that Plaintiff's mental health impairment would "significantly interfere with the [her] ability to function on a daily basis." (Tr. 263–65.) That opinion is only obviously inconsistent with some of the GAF scores, which the ALJ rightly discounted, and the opinion of Dr. Anderson, which was based on Dr. Georgiou's opinion and—as discussed below—could not provide substantial evidence for the ALJ's RFC determination for numerous reasons. That fact, and the ALJ's consistent finding that the medical opinions were inconsistent with the record indicate a critical need to further develop the minimal 334-page record.[9]

### E.    Conclusion

The Court finds that the ALJ's failure to resolve ambiguities and fully develop the record with respect to the impact of Plaintiff's mental impairments on her ability to work warrants vacating the ALJ's decision and remanding the case for further proceedings. *See Moran*, 569 F.3d at 114–15 (vacating the ALJ's decision "not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision"); *Alvarez*, 2015 WL 5657389, at *14 ("An ALJ's 'failure to develop the record adequately is an independent ground for vacating the ALJ's decision and remanding the case.'"). On remand, the ALJ should make every reasonable effort to obtain an opinion from Dr. Rezk; further develop the record with respect to Plaintiff's cognitive impairments; ask a vocational expert whether the fact that Plaintiff may need to miss two to three days of work per month may

---

[9] The Commissioner correctly notes a change in regulation made the "treating physician rule" inapplicable to disability claims filed after March 27, 2017, and gave the ALJ and Commissioner more flexibility in weighing medical opinions on record. (Defendant's Cross-Motion for Judgment on the Pleadings, Dkt. 15-1, at 19.) However, this increased flexibility in weighing evidence does not relieve the ALJ from her duty to develop the record. *See, e.g.*, *Alfonso v. Comm'r of Soc. Sec.*, No. 20-CV-03914 (LDH), 2022 WL 219575, at *7 (E.D.N.Y. Jan. 20, 2022).

preclude her from performing the jobs that the ALJ found she could obtain; and obtain additional records or opinions to explain the inconsistencies between the current medical opinions and record identified by the ALJ.

## II.   The ALJ's Mental RFC Finding Is Not Supported by Substantial Evidence

While a failure to develop the record is sufficient to remand, the Court further finds the ALJ's mental RFC finding is not supported by substantial evidence. An ALJ's RFC determination must be supported by substantial evidence. *Talavera*, 697 F.3d at 151. As noted, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (quoting *Richardson*, 402 U.S. at 401 (internal quotation marks and brackets omitted)). In determining whether the Commissioner's findings were based on substantial evidence, the Court must ascertain that the agency considered all evidence in reaching its findings. 20 C.F.R. § 404.1520(3). Moreover, the Court "is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (citation omitted). However, the Court is mindful that "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark*, 143 F.3d at 118. In any case, if there is substantial evidence in the record to support the Commissioner's findings as to any fact, they are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki*, 729 F.3d at 175–76.

Medical records alone cannot provide substantial evidence for an RFC determination; rather, an "ALJ's RFC determination must be supported by a medical *opinion*" and that opinion must have been "in the record at that time." *Pearson v. Comm'r of Soc. Sec.*, No. 20-CV-3030 (AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021) (emphasis added). Here, the medical opinions of record were from Dr. Georgiou, Dr. Delidimitropulu, LMHC Gianola, and Dr. Anderson. (Tr. 263–66, 272–79, 267–69.) The ALJ found that the opinions of Dr. Delidimitropulu

and LMHC Gianola—the only opinions from Plaintiff's treating sources—were unpersuasive, and they did not support the ALJ's RFC determination.  (Tr. 24.)

The ALJ found the opinions of Drs. Georgiou and Anderson to be persuasive, but dismissed the conclusion of Dr. Georgiou, as discussed above, which indicated a lower RFC than that reached by Dr. Anderson.  (Tr. 19–20, 265).  While the ALJ's decision stated that Dr. Anderson was "not as persuasive as the opinions of the consultative examiners as [he is] not [an] examining source," the ALJ's RFC actually hewed to Dr. Anderson's opinion over Dr. Georgiou's.  (Tr. 24.)  As a preliminary matter, the choice to discount Dr. Delidimitropulu, LMHC Gianola, and even Dr. Georgiou—while conforming to Dr. Anderson's opinion—indicates that the ALJ impermissibly cherry-picked which opinions to rely on.  *Jones v. Saul*, No. 19-CV-5542 (BM), 2020 WL 5775525, at *12 (S.D.N.Y. Sept. 11, 2020), *report and recommendation adopted*, 2020 WL 5775195 (Sept. 28, 2020) (remanding in part because an "ALJ may not 'cherry-pick' medical opinions, or selectively cite treating notes or diagnostic imaging that support the ALJ's own view while ignoring opinions and evidence that do not").

Furthermore, as a matter of law, neither Drs. Georgiou's nor Anderson's opinion can provide substantial evidence for the ALJ's RFC for three reasons.  First, both opinions were stale. Courts will find an opinion stale if it is given prior to a deterioration in Plaintiff's condition.  *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018); *see also Jones v. Comm'r of Soc. Sec.*, No. 10-CV-5831 (RJD), 2012 WL 3637450, at *3 (E.D.N.Y. Aug. 22, 2012).  Dr. Georgiou's opinion was given in March 2018, over a year prior to the May 2019 hearing.  (Tr. 263.)  In that time, Plaintiff continued treatment with Dr. Delidimitropulu and LMHC Gianola, and also began treatment with Dr. Rezk, who consistently diagnosed Plaintiff with major depressive disorder, continually observed constricted affect at their monthly sessions, and

prescribed and increased Plaintiff's antidepressant medication four separate times.  (Tr. 292–334.)

Dr. Anderson's opinion suffers from a similar year-long gap, having been given in April 2018.

(Tr. 267.)  The opinions of Drs. Georgiou and Anderson thus did not account for more than a year

of time when the medical records suggest a possible decline in Plaintiff's ability to function, and

it was error for the ALJ not to account for that.  *Chambers v. Comm'r of Soc. Sec.*, No. 19-CV-

2145 (RWL), 2020 WL 5628052, at *12 (S.D.N.Y. Sept. 21, 2020) (collecting cases) (citing, *inter

alia*, *Camille v. Colvin*, 104 F. Supp.3d 329, 343–44 (W.D.N.Y. 2015) ("[M]edical source opinions

that are 'conclusory, stale, and based on an incomplete medical record' may not be substantial

evidence to support an ALJ finding."), *aff'd*, 652 Fed. App'x 25 (2d Cir. 2016)).

In addition, Dr. Georgiou's opinion was reached after a single examination without access

to any of Plaintiff's medical records[10] and, "where a consultative examiner did not review

important medical records, the consultative examiner's opinion cannot constitute . . . substantial

evidence to support an RFC."  *Benitez v. Comm'r of Soc. Sec.*, No. 20-CV-5026 (RWL), 2021 WL

4239244, at *15 (S.D.N.Y. Sept. 17, 2021). That is particularly true in the case of mental health

impairments, where the Second Circuit has "frequently cautioned" ALJs not to rely too heavily on

consultative examiners, particularly in the context of mental illness where "a one-time snapshot of

a claimant's status may not be indicative of her longitudinal mental health."  *Estrella v. Berryhill*,

925 F.3d 90, 98 (2d Cir. 2019).  Here, Dr. Georgiou had no access to Plaintiff's relevant mental

health records, and thus no picture of Plaintiff's longitudinal mental health.  On the other hand,

Plaintiff's treating sources—Dr. Delidimitropulu and LMHC Gianola—necessarily had a "deeper

---

[10] Dr. Georgiou examined Plaintiff at the behest of the SSA.  (Pl.'s Mot., Dkt. 13, at 5.) The SSA "Evidence on Record" indicates that while the treatment documents from Dr. Delidimitropulu and LMHC Gianola had been requested, they were not received prior to Dr. Georgiou's examination. (Tr. 55–56.) Furthermore, Dr. Georgiou does not discuss reviewing any treatment notes in his evaluation.  (Tr. 263–66.)

knowledge" of Plaintiff's longitudinal health. *Rodriguez v. Kijakazi*, No. 20-CV-6829 (JLC), 2021 WL 5292751, at *15–16 (S.D.N.Y. Nov. 15, 2021).  The ALJ's failure to acknowledge that, while discounting the opinions of treating sources and relying "heavily" on the opinion of a one-time consultative examiner who had no access to Plaintiff's relevant medical records, was error.  *Id.*; *Kenneth W. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0825 (WBC), 2020 WL 7385251, at *3 (W.D.N.Y. Dec. 16, 2020) ("ALJs should not rely heavily on one-time consultative examiners, especially in the context of mental illness, as a single look at an individual's condition is not indicative of his overall mental health." (citing *Estrella*, 925 F.3d at 98)).

Dr. Anderson's opinion was based exclusively on Dr. Georgiou's one-time examination, which itself could not provide substantial evidence for the ALJ's RFC determination, as discussed above.  In addition, Dr. Anderson's opinion could not provide substantial evidence for the ALJ's RFC determination as a matter of law because Dr. Anderson also did not have access to Plaintiff's mental health records and never personally examined Plaintiff.  *Avila v. Comm'r of Soc. Sec. Admin.*, 20-CV-1360 (ER) (DF), 2021 WL 3774317, at *20 (E.D.N.Y. Aug. 9, 2021) ("Even where a non-examining opinion is properly afforded some weight, it, alone, cannot be considered substantial evidence."), *report and recommendation adopted*, 2021 WL 3774188 (S.D.N.Y. Aug. 25, 2021); *Jones*, 2012 WL 3637450, at *3 (remanding after court determined a non-examining physician's opinion was not substantial evidence given the physician had access to limited treatment records); *see also Ferraro v. Saul*, 806 Fed. App'x 13, 16 (2d Cir. 2020) ("[A]lthough the ALJ noted that [psychiatric consultative examiner] Loomis's opinion was supported by that of Dr. Hoffman, Hoffman did not examine [plaintiff], and indeed seems to have formed an assessment based in part on Loomis's notes.").

In sum, because the opinions of Dr. Delidimitropulu and LMHC Gianola did not support the ALJ's RFC, and neither Dr. Georgiou's nor Anderson's opinions can be considered substantial evidence for the ALJ's RFC, there was no substantial evidence to support the ALJ's RFC determination. *Pearson*, 2021 WL 3373132, at *4 ("[A]n ALJ's RFC determination must be supported by a medical opinion in the record at that time."); *Camille*, 104 F. Supp.3d at 343-44 ("[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." (internal quotations marks omitted)); *Benitez*, 2021 WL 4239244, at *15 ("[W]here a consultative examiner did not review important medical records, the consultative examiner's opinion cannot constitute . . . substantial evidence to support an RFC."); *Avila*, 2021 WL 3774317, at *20 ("Even where a non-examining opinion is properly afforded some weight, it, alone, cannot be considered substantial evidence.").

### III.    The ALJ's Insufficient Credibility Determination and Explanations

In addition to inadequately developing the record in this case, the Court observes that, upon remand, the ALJ should further explain her credibility determinations, including her reliance on evidence of daily functioning and extent of hospitalization.   Plaintiff argues that the ALJ improperly relied on "unfavorable portions of Plaintiff's testimony without proper consideration of [Plaintiff's] limitations in performing those daily activities" to determine that Plaintiff is in fact capable of working.  (*See* Pl.'s Mot., Dkt. 13, at 28.)  The Commissioner counters that the ALJ was obligated to consider Plaintiff's daily activities in her evaluation of the overall record, that to do so was not an error, and that the record was "not entirely consistent" with certain statements by Plaintiff concerning the "intensity, persistence, and limiting effects of her symptoms." (Defendant's Cross-Motion for Judgment on the Pleadings, Dkt. 15-1, at 25.)  While the ALJ and Commissioner can consider a claimant's daily activities in assessing the intensity and persistence

of a claimant's symptoms, 20 C.F.R. § 404.1529(c)(3)(i), "a claimant need not be an invalid to be found disabled," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

Here, the ALJ noted Plaintiff's ability "to perform personal care; to cook, clean, and shop at least at a light level; and to travel independently and by public transportation."  (Tr. 23.) However, during the oral hearing and other parts of the record, Plaintiff contradicted several of those findings.  For example, Plaintiff testified at the hearing that while she was able to take public transportation, she needed someone to go with her because she gets lost.  (Tr. 43.)  Plaintiff noted that her uncle takes her most places because she is "not capable" of being by herself.  (*Id.*)  Plaintiff also testified that she can only go shopping with another person.  (Tr. 47.)  Plaintiff noted that her mother must remind her to do her daily activities and take her medication.  (Tr. 179.)  Dr. Georgiou's evaluation indicated that Plaintiff was not cooking and that her mother cooked for the family.  (Tr. 259.)  At the hearing, the ALJ did not attempt to further develop the extent to which Plaintiff was able to perform these activities.  The ALJ's failure to further examine Plaintiff's difficulty performing these tasks calls the ALJ's credibility determination into question. *Hankerson v. Harris*, 636 F.2d 893, 895–96 (2d Cir.1980) ("[I]t was particularly important that the ALJ explore[] these symptoms with plaintiff so that the ALJ could effectively exercise his discretion to evaluate the credibility of the claimant to arrive at an independent judgment . . . regarding the true extent of the pain alleged." (internal quotation marks, brackets, and ellipsis omitted)).  Furthermore, the ALJ failed to explain how these activities were inconsistent with Dr. Georgiou's opinion or supportive of the ALJ's RFC finding.  (Tr. 23.)

In addition to the daily functions, the ALJ noted that Plaintiff's medical and mental health treatment had been "conservative" and that she had had limited hospitalization.  (Tr. 23.)  Social Security Rulings state that "the frequency or extent of the treatment sought by an individual is not

comparable with the degree of the individual's subjective complaints."  SSR 16-3p, 2017 WL 5180304 at *9.  This Ruling goes on to say "[w]e will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  *Id.*  Here, the ALJ did not perform this two-step analysis and instead merely noted the "conservative" treatment.  (Tr. 23.)  The ALJ failed to consider any possible effects that Plaintiff's home life had on her seeking more aggressive treatment and voicing to treating professionals a greater degree of difficulty.  For example, immediately following the loss of her child, members of Plaintiff's family noted that "it is what it is" and that they "only knew [the child] for a short time so what else should [they] do to grieve."  (Tr. 240.)  Social worker notes from that time suggested that Plaintiff's "judgement was based on the thoughts of her family."  (*Id.*)

Thus, on remand, the ALJ should "include a specific credibility determination, explain how [she] balanced the various factors, [including the plaintiff's daily activities], and identify any inconsistencies between the plaintiff's testimony and the rest of the record."[11]  *Hodge*, 2020 WL 7262846, at *4; *see also Calo v. Comm'r of Soc. Sec.*, No. 20-CV-3559 (AMD), 2021 WL

---

[11] The factors to be considered in assessing a claimant's credibility are:

(1) the claimant's daily activities, (2) the duration, location, frequency and intensity of the claimant's pain, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medications that the claimant takes, (5) any treatment, other than medication, that the claimant has received, (6) any other measures that the claimant employs to relieve the pain, and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

*Calo v. Comm'r of Soc. Sec.*, No. 20-CV-3559 (AMD), 2021 WL 3617478, at *4 (E.D.N.Y. Aug. 16, 2021) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

3617478, at *4–5 (E.D.N.Y. Aug. 16, 2021); *Woodcock v. Comm'r of Soc. Sec.*, 287 F. Supp. 3d 175, 176 (E.D.N.Y. 2017); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.   The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum & Order.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 10, 2022
          Brooklyn, New York